IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:10-CV-

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| DANIEL C. UBA, | ) |
| RAPHA HEALTH SYSTEMS, INC., | ) |
| d/b/a RAPHA PRIMARY CARE | ) |
| CENTER, | ) |
| | ) |
| Defendants. | ) |

**COMPLAINT**

Plaintiff, the United States of America, for its complaint, alleges as follows:

**I. INTRODUCTION**

1. This is an action brought by the United States to recover statutory damages and civil penalties under the False Claims Act, 31 U.S.C. §§ 3729-33, and to recover all available damages for unjust enrichment and payment under mistake of fact. These claims arise out of the knowing submission of false or fraudulent claims to the United States (<u>i.e.</u>, the Medicare and Medicaid programs) for reimbursement of medical services that were not actually rendered, that were not medically necessary as required, that were not supported by proper documentation, and that were flagrant billing errors.

## II. JURISDICTION AND VENUE

2. This action arises under the False Claims Act, as amended 31 U.S.C. §§ 3729-3733, and at common law. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1331.

3. This Court has personal jurisdiction over the defendants because they prepared and submitted their false claims and false statements to the United States, and/or were unjustly enriched, and/or were paid under mistake of fact in and from this district.

4. Venue is proper in this district under 28 U.S.C. §§ 1391(b) and 1391(c), and under 31 U.S.C. § 3732(a). At least one defendant can be found, resides, and transacts business within the district, and the acts proscribed by the False Claims Act occurred within the district.

## III. PARTIES

5. Plaintiff is the United States of America, acting on behalf of the United States Department of Health and Human Services (HHS). HHS is an agency and instrumentality of the United States and its activities, operations and contracts are paid from federal funds. HHS has delegated the administration of the Medicare Program to its component agency, which was known as the Health Care Financing Administration (HCFA) and has changed its name to Centers for Medicare and Medicaid Services (hereinafter "CMS").

6. Defendant Rapha Health Systems Inc., doing business as

Rapha Primary Care Center ("Rapha") is a corporation organized and existing under the laws of the State of North Carolina.

7. Defendant Dr. Daniel Uba ("Dr. Uba") is a citizen and resident of the State of North Carolina and is subject to the jurisdiction of this Court. At all times relevant to the Complaint, Dr. Uba has been the owner and primary physician of Rapha.

8. At all times relevant to the Complaint, Rapha and Dr. Uba provided medical services in eastern North Carolina. At all times relevant to the Complaint, Rapha and Dr. Uba were participants in the Medicare and Medicaid programs within the Eastern District of North Carolina and provided medical services in that District.

### IV. OPERATION OF THE MEDICARE AND MEDICAID PROGRAMS

9. Except as otherwise specifically noted, the allegations describe the Medicare and Medicaid programs and other facts during the period relevant to this action, i.e., from December 1, 2003, through the present.

10. Title XVIII of the Social Security Act, 42 U.S.C. §§ 1395, et seq., establishes the Health Insurance for Aged and Disabled Program, popularly known as the Medicare program. The Medicare program is comprised of two parts. Part A, which is not at issue in this case, provides hospitalization insurance for eligible individuals. 42 U.S.C. §§ 1395c - 1395i-5. Part B is a voluntary subscription program of supplementary medical insurance

covering items and services other than hospitalization expenses. 42 U.S.C. § 1395k(a)(2)(B). An enrolled individual who receives a covered medical service can either pay for the service herself or himself, and request reimbursement of 80% of the reasonable charge, or assign the right to reimbursement to the provider rendering the service, who collects as an assignee of the beneficiary under 42 U.S.C. § 1395u(b)(3)(B)(ii).

11. Reimbursement for Medicare claims is made by the United States through CMS. CMS, in turn, assigns the task of paying Part B claims from the Medicare Trust Fund to private insurance carriers under 42 U.S.C. § 1395u. HHS, through CMS, administers the Medicare Part B Program in the State of North Carolina through a private insurance carrier, CIGNA Healthcare, Inc.

12. As the administrator for the Medicare Part B insurance program in North Carolina, CIGNA Healthcare receives requests for payment from providers, such as Rapha and Dr. Uba, for medical services furnished to Medicare beneficiaries. Providers bill for services rendered to Medicare beneficiaries by electronically submitting a Health Insurance Claim Form (hereinafter "Medicare claim form") to CIGNA Healthcare, Inc. As a condition of payment, the provider furnishes and certifies to certain information on this Medicare claim form, including the identity of the patient, the provider number, the procedure code number, and a brief narrative explaining the diagnosis and the medical necessity for the service

4

rendered. In submitting electronic Medicare claim forms, providers must certify that the information included on the form presents an accurate description of the services rendered and that the services were medically necessary.

13. Because it would not be feasible to review medical documentation before paying each claim, CIGNA Healthcare generally makes payment under Medicare Part B after the Medicare claims forms are submitted with the providers' certification.

14. Title XIX of the Social Security Act, 42 U.S.C. §S 1396, <u>et</u> <u>seq</u>., establishes the Medicaid program. Medicaid is a joint federal-state program that provides health care benefits for certain groups, primarily the poor and disabled. The United States provides monies to a state to partially fund the program and also ensures that the state complies with minimum standards in the administration of the program.

15. Each state must have a single State agency to administer the Medicaid program. 42 U.S.C. § 1396a(a)(5). The North Carolina Medicaid program is administered by the North Carolina Department of Human Resources, renamed the North Carolina Department of Health and Human Services (NCDMA).

16. Medical providers bill Medicaid for services provided to Medicaid beneficiaries by submitting claim forms electronically to NCDMA through its fiscal agent, Electronic Data Systems (EDS). These electronic Medicaid claim forms contain certain information

regarding the service provided and request payment for the provider.

### V. GENERAL ALLEGATIONS

#### A. MEDICARE RULES FOR MEDICAL SERVICES TO PATIENTS

17. Medicare does not pay for any and all services furnished to Medicare beneficiaries, but, rather, only for those which are "reasonable and necessary for the diagnosis or treatment of illness or injury ..." 42 U.S.C. § 1395y(a)(1)(A).

18. Medicare only pays for medical services actually provided, for medical services determined to be medically necessary, and for medical services supported by proper documentation.

19. To obtain reimbursement from Medicare for medical services, the provider must maintain records to support the services billed.

#### B. MEDICAID RULES FOR MEDICAL SERVICES TO PATIENTS

20. As set forth in paragraphs below, in order for the medical services to be reimbursable, medical services must be actually provided, determined to be medically necessary, and supported by proper documentation.

21. Medicaid requires the provider of services to maintain all records to support the services billed.

22. For dually eligible Medicare and Medicaid beneficiaries, Medicaid also paid the 20 percent Medicare

6

deductible and other charges based on the Medicare payment rules. This is referred to as a crossover.

### C. FALSE CLAIMS FOR MEDICAL SERVICES

23. Beginning prior to 2004, Rapha and Dr. Uba became participants in the Medicare Part B Program and began submitting claims to CIGNA Healthcare seeking Medicare reimbursement for services provided to patients who assigned their right of reimbursement to defendants. Rapha and Dr. Uba became participants in the Medicaid program and began submitting claims to NCDMA through EDS seeking reimbursement prior to 2004.

24. For the period of December 2003 to the present, defendants Rapha and Dr. Uba knowingly submitted or caused the submission of false or fraudulent claims to Medicare and Medicaid, and made or caused to be made false records and statements to get Medicare and Medicaid claims paid for patients as set forth in paragraphs below:

25. Rapha and Dr. Uba were required to but failed to submit accurate, individualized claims for its patients describing the patients' actual medical condition, services actually provided, medical necessity, and right to payment.

26. Rapha and Dr. Uba knowingly submitted incomplete, inconsistent, and false or fraudulent claims to Medicare, through CIGNA Healthcare, and to Medicaid, through NCDMA, in which they automatically and mechanically repeated that the services were

7

provided and met the medical necessity requirements, or similar representations.

27. In fact, many of the Medicare and Medicaid patients did not qualify for medical services reimbursement by Medicare or Medicaid. For example, for many of these claims, the patients did not actually receive the services billed, the documentation submitted did not support the medical necessity of the services rendered, the billing was falsely "up-coded" to increase reimbursement, or the claims were not properly documented.

28. The Medicare and Medicaid electronic claims and the supporting statements provided which defendants knowingly submitted to CIGNA Healthcare and NCDMA, were incomplete, inconsistent, misleading, and false or fraudulent.

29. Defendants knowingly submitted claims for medical services that were not provided, were not supported by medical necessity, and were flagrantly in error.

30. On information and belief, Defendants have submitted numerous false claims and made, used, or caused to be made or used, numerous corresponding false records material to these false claims. The total number of false claims made and false records made or used are too numerous to specify details for each with greater particularity, but representative examples are provided and total damages will be established using an accepted extrapolation method from an audit based upon a statistically valid random sample

8

of the universe of the defendants' claims during the 2004 to 2010 time period.

31. Details of the false claims and supporting false statements are provided for representative patients, but their names and personal information will be provided directly to the defendant's counsel in order to protect patient privacy and comply with the Health Insurance Portability and Accountability Act ("HIPPA"), 42 U.S.C. § 1320d.

32. Medicare requires a physician re-certification for Medicare covered home health services under a home health plan of care to affirm the services meet the patient's needs. This recertification is required once every sixty days, and is reimbursable under HPCS code G0179. The defendants systematically billed home health recertification visits numerous times during various sixty day periods, including numerous times within a single day and numerous times with a sixty day period.

33. As examples, defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 1 for services provided from December 17, 2005 (24 units), January 10-21, 2006 (20 units), and April 16, 2006 (16 units), and these false claims were paid on January 13, 2006, February 22, 2006, and September 25, 2007, respectively, for a total of $3,401.82.

34. Defendants electronically billed Medicare for home health

9

service recertifications (HCPCS code G0179) for Patient 2 for services provided on September 14, 2005 (60 units), and these false claims were paid on December 28, 2005 for a total of $2,575.20.

35. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 3 for services provided from January 31 to March 18, 2006 (24 units) and June 24, 2006 (28 units), and these false claims were paid on March 18, 2006, and July 29, 2006, respectively, for a total of $2,223.52.

36. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 4 for services provided on January 31, 2006 (42 units), and these false claims were paid on March 18, 2006, for a total of $1,795.92.

37. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 5 for services provided on April 1, 2004, July 17, 2004, November 25, 2005 (46 units), and February 2, 2006 (41 units), and these false claims were paid on September 9, 2004, January 13, 2006, and March 18, 2006, respectively, for a total of $3,840.

38. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 6 for services provided from October 26 to November 7, 2006 (73 units), and these false claims were paid on November 10, 2006, for a total of $3,131.08.

39. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 7 for services provided on October 27, 2005 (54 units) and April 25, 2006 (9 units), and these false claims were paid on December 28, 2005, and May 17, 2006, respectively, for a total of $2,702.52.

40. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 8 for services provided from November 9 - 30, 2005 (22 units) and December 1 - 31, 2005 (31 units), and these false claims were paid on February 2, 2006, for a total of $2,274.76.

41. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 9 for services provided from November 6, 2005 to October 18, 2006 (46 units) and these false claims were paid on February 2, 2006, July 14, 2006, and November 28, 2006, for a total of $3,383.32.

42. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 10 for services provided on October 17, 2005 (64 units), and these false claims were paid on December 28, 2005, for a total of $2,746.88.

43. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 11 for services provided from November 13 - 30, 2005 (27 units), and December 1 - 31, 2005 (30 units), and these false claims were paid on December 2, 2006, for a total of $2,103.08.

44. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 12 for services provided from January 9, 2005 (51 units), and these false claims were paid on July 6, 2006, for a total of $1,907.03.

45. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 13 for services provided from October 24 - 31, 2005 (8 units), November 1 - 31, 2005 (30 units), and December 1 to 22, 2005 (22 units), and these false claims were paid on February 2, 2006, for a total of $2,575.20.

46. Defendants electronically billed Medicare for home health service recertifications (HCPCS code G0179) for Patient 14 for services provided from November 4 - 30, 2005 (27 units), December 1 - 31, 2005 (31 units), and June 23, 2006 (51 units), and these false claims were paid on March 4, 2006, March 4, 2006, and May 8, 2007, respectively, for a total of $4,670.12.

47. On information and belief, the defendants systematically billed for medical services not actually rendered, billed for services without medical necessity as required, and billed without support of proper documentation.

48. Defendants transmitted their claims for payment to Medicare and Medicaid electronically. The information provided was inaccurate, misleading, and inconsistent with defendants' information.

12

Case 5:10-cv-00538-FL   Document 1   Filed 12/01/10   Page 12 of 18

49. Upon information and belief, the claims submitted to Medicare and Medicaid by Defendants were routinely false and incomplete with respect to the service being provided and the medical necessity of the medical services.

50. Defendants' submission of false electronic data constitutes the submission of false statements to get false or fraudulent claims paid or approved by the United States.

51. For the period December, 2003 to the present, defendants Rapha and Dr. Uba had actual knowledge, deliberately ignored, or recklessly disregarded that the claims submitted to Medicare and Medicaid were routinely false or fraudulent.

52. During the period December, 2003 to the present, Defendants falsely certified to the truthfulness and accuracy of electronic claim forms submitted to Medicare and Medicaid for medical services.

53. Defendants were unjustly enriched by these false claims, in that they received monies to which they were not entitled, and also received payments under mistake of fact.

### FIRST CAUSE OF ACTION

**False Claims Act: Submission of False Claims**

54. The United States realleges and incorporates by reference paragraphs 1 through 53 above as if set forth fully herein.

55. By virtue of the acts described above, defendants Rapha and Dr. Uba knowingly presented or caused to be presented to the

13

United States false or fraudulent Medicare and Medicaid claims, and conspired with others, for payments in violation *of* the False Claims Act, as amended, 31 U.S.C. § 3729 (a)(1)(A) and (C); in that the medical services for which defendants claimed Medicare and Medicaid reimbursement were not provided, were not medically necessary, were not supported by proper documentation, or otherwise did not qualify for reimbursement under the Medicare or Medicaid programs.

56. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

## SECOND CAUSE OF ACTION

**False Claims Act: False Statements to Get a Claim Paid**

57. The United States realleges and incorporates by reference paragraphs 1 through 53 above as if set forth fully herein.

58. By virtue of the acts described above, defendants Rapha and Dr. Uba knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent Medicare and Medicaid claim in violation of the False Claims Act, or conspired with others, in violation of the False Claims Act, as amended, 31 U.S.C. § 3729(a)(1)(B) and (C); in that the medical services claimed for Medicare and Medicaid reimbursement were not provided, were not medically necessary, were not supported by proper documentation, or otherwise did not qualify for

14

reimbursement under the Medicare or Medicaid programs.

59. By reason of the foregoing, the United States suffered actual damages in an amount to be determined at trial.

### THIRD CAUSE OF ACTION

**Payment under Mistake of Fact/ Restitution**

60. The United States realleges and incorporates each allegation in paragraphs 1 through 53 herein.

61. This is a claim against the defendants under mistake of fact.

62. The above described false claims and false statements which defendants Rapha and Dr. Uba submitted or caused to be submitted to the United States through CIGNA Healthcare and NCDMA constituted misrepresentations of material fact in that they misrepresented the conditions of patients and therefore the medical necessity for medical services.

63. The United States, acting on the accuracy and truthfulness of the information contained in the claims, paid defendants Rapha and Dr. Uba certain sums of money to which they were not entitled, and defendants are thus liable to account for and pay such amounts, which are to be determined at trial, to the United States.

### FOURTH CAUSE OF ACTION

**Unjust Enrichment/Restitution**

64. The United States realleges and incorporates by reference

15

each allegation in paragraphs 1 through 53 as if fully set forth herein.

65. This is a claim for recovery of monies by which defendants has been unjustly enriched.

66. By virtue of the false claims and false statements described above, Rapha and Dr. Uba wrongfully obtained Medicare and Medicaid funds to which it was not entitled.

67. By directly or indirectly obtaining Medicare and Medicaid funds to which they were not entitled, defendants Rapha and Dr. Uba were unjustly enriched at the expense of the United States, and are liable to account and pay such amounts, or the proceeds therefrom, which are to be determined at trial, to the United States.

## **PRAYER FOR RELIEF**

WHEREFORE, the United States demands judgment against the defendants as follows:

**As to Counts I & II (False Claims Act):**

Against defendants Rapha and Dr. Uba, jointly and severally, and that the judgment be for:

1. statutory damages in an amount to be established at trial and civil penalties for each false claim as allowed by law;

2. the costs of this action, plus interest, and investigative costs as provided by law; and

3. any other relief that this Court deems appropriate.

### As to Count III (Payment By Mistake of Fact / Restitution):

Against defendants Rapha and Dr. Uba, and that judgment be for:

1. an amount equal to the money paid by the United States to defendants, plus interest;

2. the costs of this action, plus interest, and investigative costs as provided by law; and

3. any other relief that this Court deems appropriate.

### As to Count IV (Unjust Enrichment/Restitution)

Against defendants Rapha and Dr. Uba, and that the judgment be for:

1. an amount equal to the money paid by the United States to defendants;

2. the costs of this action, plus interest, and investigative costs as provided by law; and

3. any other relief that this Court deems appropriate.

Respectfully submitted, this the 1st day of December, 2010.

17

GEORGE E.B. HOLDING
United States Attorney


BY:   /s/ NEAL I. FOWLER
      NEAL I. FOWLER
Attorney for Plaintiff
Assistant United States Attorney
Civil Division
310 New Bern Avenue
Suite 800, Federal Building
Raleigh, NC 27601-1461
Telephone: (919) 856-4049
Facsimile: (919) 856-4821
E-mail: neal.fowler@usdoj.gov
NC Bar #27371